Michael G. SMITH, Appellant,

v.

David L. SNEED, D.O., Individually and d/b/a The South Austin Family Practice Clinic, Appellees.

No. 03–96–00284–CV.

Court of Appeals of Texas, Austin.

Jan. 23, 1997.

William S. Warren, Warren & Cruzcosa, L.L.P., Austin, for Appellant.

Katherine E. Bell–Moss, Clark, Thomas & Winters, Austin, for Appellee.

Before Powers, Aboussie and Jones, JJ.

JONES, Justice.

Appellant, Michael G. Smith, sued appellees, David L. Sneed, D.O., individually and d/b/a the South Austin Family Practice Clinic (collectively "Sneed"), alleging negligence, negligent misrepresentation, and false imprisonment. The district court granted summary judgment in favor of Sneed. Smith now appeals, arguing in three points of error that the trial court erred in concluding that: (1) Sneed did not owe a duty to Smith; (2) Smith could not maintain an action for negligent misrepresentation against Sneed; and (3) Smith could not maintain an action against Sneed for false imprisonment. We will affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 27, 1992, Smith obtained a prescription from Sneed for Soma, a prescription muscle relaxant Smith was using for treatment of chronic back pain. On October 8, 1992, two and one-half months after the prescription had been issued, Smith presented it to a Wal–Mart pharmacy. The pharmacist on duty, Mark Zamutt, suspicious that a "zero" had been added to this prescription to make it appear to be for 360 Soma tablets, called Dr. Sneed's office to determine if the prescription was a forgery. During his conversation with a nurse at Dr. Sneed's office, Zamutt was told that the prescription was written for only thirty-six tablets of Soma.

After speaking with the nurse, Zamutt "gestured" to another Wal–Mart pharmacist, who called the police. A police officer arrived at the pharmacy and telephoned Dr. Sneed, who told him that he wrote the prescription for only thirty-six tablets of Soma and that Smith was on probation for previously altering a prescription. Smith was then arrested and charged with attempting to obtain a controlled substance by fraud. *See* Tex. Health & Safety Code Ann. § 481.129 (West Supp.1997). Smith was incarcerated for four days before he was able to post bond.[1]

In July 1993, Smith's case of attempting to obtain drugs by fraud went to trial in Travis County Court. The State subpoenaed Dr. Sneed to appear as a witness and produce the records he maintained on Smith. At the courthouse, Dr. Sneed examined Smith's records and concluded that, in fact, he had written Smith's prescription for 360 tablets of

---

1. As a result of his arrest on October 8, Smith was again arrested on October 16, 1992 for violating his earlier probation. Probation revocation proceedings were commenced and Smith was again incarcerated for 14 days.

Soma. The criminal case against Smith for fraudulently obtaining prescription medication was immediately dismissed.

Smith subsequently sued Sneed and Wal-Mart for negligence, negligent misrepresentation, and false imprisonment. Sneed first moved for partial summary judgment on Smith's claim of false imprisonment, which was granted. Sneed later sought and obtained summary judgment on Smith's remaining causes of action. The trial court severed the suit against Sneed, thus allowing the judgment in his favor to become final.

## DISCUSSION

The standards for reviewing a summary judgment are well established: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently non-meritorious claims and defenses. *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

In his first point of error, Smith contends that Sneed owed him a duty not to report false information to Wal-Mart employees, and that Sneed's breach of that duty caused Smith to be arrested. Where an individual is implicated in a crime, subsequently exonerated, and then brings a claim for damages caused by the disclosure of information to the police and the criminal prosecution, such a complaint is in essence a claim for malicious prosecution. *See, e.g.,*

*Browning–Ferris Indus., Inc. v. Lieck,* 881 S.W.2d 288 (Tex.1994); *Brookshire Grocery Co. v. Richey,* 899 S.W.2d 331 (Tex.App.—Tyler 1995, writ granted); *Coniglio v. Snyder,* 756 S.W.2d 743 (Tex.App.—Corpus Christi 1988, writ denied). Smith, however, is not asserting a claim for malicious prosecution;[2] rather, his claim, based on Sneed's failure to verify his prescription records when requested to do so by the Wal-Mart pharmacist, sounds in negligence. Thus, we must determine whether Sneed owed Smith a duty of care independent of that required by the tort of malicious prosecution, *i.e.,* whether Smith can recover for Sneed's alleged negligence in falsely reporting a crime. Our discussion is aided by first analyzing the policy behind the tort of malicious prosecution.

Actions for malicious prosecution are disfavored in the law, because of their inherent tendency to stultify the reporting of crimes. *Diamond Shamrock Corp. v. Ortiz,* 753 S.W.2d 238, 241 (Tex.App.—Corpus Christi 1988, writ denied); *Ada Oil Co. v. Dillaberry,* 440 S.W.2d 902 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ dism'd w.o.j.); *Reed v. Lindley,* 240 S.W. 348, 351 (Tex.Civ.App.—Fort Worth 1922, no writ). Thus, courts stringently enforce five requirements for recovery under a malicious prosecution claim: (1) commencement of a criminal prosecution; (2) with malice; (3) without probable cause; (4) the prosecution ended in acquittal; and (5) damages. *Coniglio,* 756 S.W.2d at 744. In this context, the requirement of "malice" is satisfied by a showing that the offending actions were taken with reckless disregard for the rights of others. *Ellis County State Bank v. Keever,* 870 S.W.2d 63, 69 (Tex.App.—Dallas 1992), *aff'd in part, rev'd in part on other grounds,* 888 S.W.2d 790 (Tex.1994).

---

2. In his original petition, filed October 7, 1994, Smith alleged malicious prosecution, negligence, and false imprisonment, but later dropped the malicious prosecution claim in an amended pleading. Before granting summary judgment, the trial court granted Smith leave to amend his petition to again allege malicious prosecution. Smith did not do so, apparently because the statute of limitations had expired. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.002 (West Supp. 1997); *Patrick v. Howard,* 904 S.W.2d 941, 944 (Tex.App.—Austin 1995, no writ) (one-year limitations period for malicious prosecution begins to run upon termination of criminal prosecution).

The tort of malicious prosecution serves an important purpose. It exists between the tension of two important societal interests: encouraging the reporting of crimes and discouraging wrongful or unjustifiable prosecution. As stated by the supreme court:

It is important that every citizen should be protected against malicious prosecutions, and it is equally important that crimes should be punished, in order that the law abiding citizen may be secure in life, liberty and property. To make a citizen liable to be mulcted in damages for an honest discharge of duty is to give immunity to crime, and to weaken the restraining power of the criminal law, thereby endangering the security of law abiding people.

*Sebastian v. Cheney,* 86 Tex. 497, 25 S.W. 691, 694 (1894).

In order to maintain this delicate balance between encouraging people to report crimes and avoiding oppressive litigation of criminal charges, individuals cannot be held liable where their purpose in making an accusation was the socially beneficial one of bringing an offender to justice, without a malicious intent. Texas courts have long recognized a strong public policy in favor of exposing crime. *See Parker v. Dallas Hunting & Fishing Club,* 463 S.W.2d 496, 499 (Tex.Civ. App.—Dallas 1971, no writ); *see also Montgomery Ward v. Kirkland,* 225 S.W.2d 906, 909 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.); *cf. Goodyear Tire & Rubber Co. v. Sanford,* 540 S.W.2d 478, 483–84 (Tex. Civ.App.—Houston [14th Dist.] 1976, no writ) (agreement tending to stifle reporting and prosecution of crime is void as against public policy). The efficient enforcement of criminal law requires that "private persons who aid in the enforcement of the law should be given an effective protection against the prejudice that is likely to arise from the termination of prosecution in favor of the accused." *Lieck,* 881 S.W.2d at 290 (citing Restatement (Second) of Torts ch. 29, intro. note, at 405 (1977)). This policy justifies the various restrictions and limitations applicable to malicious prosecution suits complaining of criminal proceedings and explains why such actions are disfavored in the law.

■ The same policy applies to our consideration of Smith's negligence claim. *See id.; see also Daughtry v. Blanket State Bank,* 60 S.W.2d 272, 273 (Tex.Civ.App.—Austin 1933, no writ). The balance of factors leans toward allowing wide latitude in reporting facts to prosecuting authorities to ensure that the exposure of crime is not discouraged. A threat of action that does not require an element of maliciousness would serve to discourage citizen participation in criminal investigations and prosecutions and threaten the delicate balance between protecting against wrongful prosecution and encouraging the reporting of crime. Thus, in the absence of an accuser's having ill will, evil motive to injure another, or reckless disregard of the rights of another, an individual cannot recover for being wrongfully accused of a crime. *See Closs v. Goose Creek Consol. Indep. Sch. Dist.,* 874 S.W.2d 859, 879 (Tex.App.—Texarkana 1994, no writ). The social policy factors militate against recovery in tort for damage caused by an incorrect, but nonmalicious, prosecution.[3]

There is no guarantee in our society that only guilty persons will be accused and arrested. *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Except in cases for which malicious prosecution is a viable remedy, a person wrongfully accused of a crime must bear a risk of being subjected to prosecution. Otherwise, those who suspect wrongful activity may be intimidated from speaking about it to the proper authorities for fear of becoming embroiled themselves in the hazards of lengthy and expensive litigation. *See* Fowler V. Harper, *Malicious Prosecution, False Imprisonment and Defamation,* 15 Tex. L.Rev. 157, 168 (1937). For these reasons, the balance of factors weighs heavily against the wrongly accused. It is unfortunate that this balance may sometimes result in "something less than natural justice." *See Louis v. Blalock,* 543 S.W.2d 715, 719 (Tex.Civ.App.—

---

3. This policy is further evinced by the Texas Family Code, which provides that a person who reports the abuse or neglect of a child in good faith is immune from civil and criminal liability, and a person who reports the abuse or neglect of a child in bad faith or with a malicious purpose is not immune from liability. *See* Tex. Fam.Code Ann. § 261.106(a)-(c) (West 1996).

Amarillo 1976, writ ref'd n.r.e.). Yet, allowing the accused to recover in negligence poses too great a disincentive for people to cooperate freely with law enforcement officials. To hold, as Smith would have us do, that Sneed's negligence is actionable would in substance convert the tort of malicious prosecution to one of negligent prosecution. We therefore decline to hold that a duty exists outside the torts of malicious prosecution and defamation not to falsely accuse someone of criminal wrongdoing. *See ITT Consumer Fin. Corp. v. Tovar,* 932 S.W.2d 147, 155–56 (Tex.App.—Fort Worth 1996, writ requested); *Campbell v. City of San Antonio,* 43 F.3d 973, 981 (5th Cir.1995); *see also Pokorny v. First Fed. Savs. & Loan Assoc. of Largo,* 382 So.2d 678, 683 (Fla.1980); *Lundberg v. Scoggins,* 335 N.W.2d 235, 236 (Minn. 1983). We overrule point of error one.

■ In his second point of error, Smith claims that the trial court erred in granting summary judgment on his cause of action for negligent misrepresentation. To prevail in an action for negligent misrepresentation, a plaintiff must prove that: (1) the defendant made the representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (citing Restatement (Second) of Torts § 552(1) (1977)).

■ Smith contends that Sneed made misrepresentations to Zamutt, the Wal–Mart pharmacist, when Sneed told Zamutt that he did not write Smith's prescription for 360 tablets of Soma. Even assuming all of the other elements of negligent misrepresentation were met, the summary judgment evidence shows conclusively that Smith did not rely on these representations. Rather, these apparent misrepresentations were spoken to and relied upon by Zamutt and the police officer who arrested Smith. Smith could not rely on representations and statements that Sneed made to others and of which Smith was unaware.

■ Smith also asserts that Sneed made negligent misrepresentations directly to him by writing the prescription for 360 tablets of Soma. Smith contends that the prescription itself constitutes an express representation by Sneed that Smith could present the prescription at a pharmacy and obtain 360 tablets of Soma without being subjected to an accusation of forgery and an arrest instigated by Sneed. We disagree. Even if the prescription constituted such an express representation, it was at most a promise to verify the prescription in the future. In order to establish a cause of action for negligent misrepresentation, however, there must be proof of the false representation of an *existing fact,* not the breach of a future promise. *See Williams v. City of Midland,* 932 S.W.2d 679, 684 (Tex.App.—El Paso 1996, no writ); *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.,* 847 S.W.2d 289, 294 (Tex.App.—El Paso 1992, writ denied). We overrule point of error two.

■ In his third point of error, Smith contends that the trial court erred in granting Sneed's first motion for summary judgment on Smith's claim of false imprisonment, because there was an issue of material fact as to whether Sneed requested or directed Smith's detention and arrest. We disagree. The essential elements of a claim of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985). Generally, liability may extend to anyone who directs, requests, or participates in a detention, including the detention of a private citizen whom the defendant identifies as the perpetrator of a crime. *Bossin v. Towber,* 894 S.W.2d 25, 29 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Halbert v. City of Sherman,* 33 F.3d 526, 528 (5th Cir.1994).

Sneed's motion for partial summary judgment was supported by an affidavit in which Dr. Sneed stated clearly and unequivocally that he never requested or directed a police officer to arrest Smith. In response, Smith points to the deposition testimony of Zamutt,

the Wal–Mart pharmacist who detained Smith. Although Zamutt's testimony arguably indicates that Sneed requested *him* to have Smith arrested, the pharmacist's deposition was not before the trial court at the first summary judgment hearing on Smith's false imprisonment claim, nor when the trial court granted partial summary judgment on that claim. In fact, Zamutt's deposition had not even been taken when Sneed's first summary judgment hearing was held. Zamutt's deposition was taken prior to the hearing on Sneed's second motion for summary judgment, but Smith never filed a motion to reconsider the partial summary judgment on Smith's false imprisonment claim. An appellate court may consider only the record as it properly appeared when the summary judgment motion was heard. *See Oden v. Marrs*, 880 S.W.2d 451, 454 (Tex.App.—Texarkana 1994, no writ); *Nicholson v. Memorial Hosp. System*, 722 S.W.2d 746, 749 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.). The deposition of the Wal–Mart pharmacist was not part of the record before the trial court at the time of the first summary judgment hearing and thus cannot be considered in this appeal. *See id.*

■ Unlike the deposition of the pharmacist, the deposition of the police officer who arrested Smith was before the trial court at the time of the summary judgment hearing on Smith's claim of false imprisonment. That deposition shows that the officer spoke with Dr. Sneed before arresting Smith, but does not state that Sneed directed the police officer to arrest Smith.

"Under Texas law, a private citizen does not incur liability simply because he mistakenly informs the police that the suspect has committed a crime.... Rather, the citizen must actually direct the police to make the arrest." *Halbert*, 33 F.3d at 528 (citing *Armstead v. Escobedo*, 488 F.2d 509, 511 (5th Cir.1974)). The relevant summary judgment evidence in the present case shows that Dr. Sneed simply told the officer that he had written the prescription for 36 tablets, rather than 360, and that Smith was on probation for forging another prescription. As a matter of law, this does not constitute directing the police officer to arrest Smith, but is

merely the reporting of what he thought was a crime in progress. We overrule point of error three.

## CONCLUSION

Having overruled Smith's points of error, we affirm the judgment of the trial court.