# NO. 12-15-00197-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MURPHY USA, INC. AND MARY FRANCES MAXWELL, MGR., APPELLANTS* | § | *APPEAL FROM THE 123RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *FREDDIE J. ROSE AND LAUREEN IRVING, APPELLEES* | § | *SHELBY COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Murphy USA, Inc. and Mary Frances Maxwell appeal the denial of their motion to dismiss a lawsuit that Freddie J. Rose and Laureen Irving filed against them. In a single issue, they contend the Texas Citizens Participation Act applies and Rose and Irving failed to meet their burden to establish a prima facie case on each element of any of their claims. They also request that the case be remanded for a determination of attorney's fees and costs. We reverse and render in part and remand in part.

### BACKGROUND

On or about August 17, 2014, Freddie J. Rose and Laureen Irving pulled into the Murphy USA gas station located at the Wal-Mart in Center, Texas. Mary Frances Maxwell, the manager, turned on the gas pump with the understanding that Rose would pay for the gas when he was finished. Rose pumped more than eighty dollars' worth of gasoline into his vehicle and three or four other containers. He provided a credit card for payment, which was declined. Rose then tendered a personal check, which was declined by Murphy's electronic check verification system. Following that, Rose provided a business check, which also was declined by the verification system. Rose then returned to his vehicle.

Maxwell believed Rose was attempting to leave without paying for the gasoline and called the Center Police Department to report an attempted theft. She also asked an employee to print a drive-off ticket for the gasoline. She then stood in front of Rose's vehicle until the police arrived. Maxwell spoke with the officers when they arrived and signed a complaint against Rose. As a result, Rose was arrested for attempted theft, his car was impounded, and Irving was stranded. An investigation showed that Rose had sufficient funds in his accounts to pay for the gasoline, and the checks were declined for some other reason not specified in the record. Rose was not prosecuted by the county attorney, and the charges against him were dropped.

Rose and Irving subsequently filed suit against Murphy and Maxwell. They alleged causes of action against Maxwell for malicious prosecution, defamation, false imprisonment, and negligence.[1] They alleged further that Murphy is liable as Maxwell's employer. The basis for Rose and Irving's claims is that Rose's checks were supported by sufficient funds. Therefore, they alleged, Maxwell falsely accused Rose of attempting to steal gasoline. Rose and Irving alleged further that Maxwell could have determined Rose's checks were declined for a different reason and resolved the problem if she had called the verification service or allowed Rose to do so. Murphy and Maxwell filed a motion to dismiss the suit, alleging the causes of action "fall squarely within the parameters" of the Texas anti-SLAPP[2] statute pursuant to Section 27.003 of the Texas Civil Practice and Remedies Code. The court denied the motion without a hearing, and this appeal followed.[3]

## ISSUE PRESENTED

In a single issue, Murphy and Maxwell assert that the Texas Citizens Participation Act (TCPA) applies because Rose and Irving's causes of action are based on Maxwell's right to petition. They argue further that Rose and Irving failed to establish a prima facie case on each

---

[1] Their amended petition does not allege any causes of action for which Maxwell is allegedly liable to Irving only. On appeal, Irving contends that she has passenger standing under the Fourth Amendment. Because we dispose of this case based on Rose's causes of action, we need not address this issue.

[2] The Texas Citizens Participation Act is considered an anti-SLAPP statute. Anti-SLAPP stands for "strategic lawsuit against public participation." *Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519, 521 n.1 (Tex. App.—Fort Worth 2012, pet. denied).

[3] An interlocutory appeal of a motion to dismiss under section 27.003 is authorized by the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12) (West Supp. 2016).

element of any of their claims, and, therefore, the trial court erred in denying their motion to dismiss Rose and Irving's suit.

## TEXAS CITIZENS PARTICIPATION ACT

The purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2015). Although we construe the TCPA liberally "to effectuate its purpose and intent fully," the Act "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case or common law or rule provisions." *Id.* § 27.011 (West 2015).

The TCPA provides a mechanism for early dismissal of a cause of action that "is based on, relates to, or is in response to a party's exercise of the right of free speech, the right to petition, or right of association . . . ." *Id*. § 27.003 (West 2015). The party moving for dismissal has the initial burden to establish by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right to petition." *Id*. § 27.005(b)(2). If the movant makes this showing, the burden shifts to the nonmovant to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c). However, even if the nonmovant makes this showing, the trial court must dismiss the cause of action if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id*. § 27.005(d). When determining whether to dismiss the legal action, the court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id*. § 27.006(a) (West 2015).

The Texas Supreme Court has explained the meaning of the requirement that the nonmovant establish by "clear and specific evidence a prima facie case." *In re Lipsky*, 460 S.W.3d 579, 590-91 (Tex. 2015) (orig. proceeding). "Clear" means "unambiguous, sure or free from doubt," and "specific" means "explicit or relating to a particular named thing." *Id*. at 590. A "prima facie case" is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id*. It refers to evidence sufficient as a matter of law

to establish a given fact if it is not rebutted or contradicted. *Id*. The "clear and specific evidence" requirement does not impose an elevated evidentiary standard, nor does it categorically reject circumstantial evidence. *Id*. at 591. But it requires more than mere notice pleading. *Id.* at 590-91. Instead, a plaintiff must provide enough detail to show the factual basis for its claim. *Id*. at 590.

We review questions of statutory construction de novo. ***Molinet v. Kimbrell***, 356 S.W.3d 407, 411 (Tex. 2011). We consider de novo the legal question of whether the movant has established by a preponderance of the evidence that the challenged legal action is covered by the TCPA. ***Serafine v. Blunt***, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.). We also review de novo a trial court's determination of whether a nonmovant has presented clear and specific evidence establishing a prima facie case of each essential element of the challenged claims. *Id.*

## APPLICABILITY OF THE TCPA

Murphy and Maxwell contend that Rose and Irving's amended petition is based on, relates to, and is in response to Maxwell's conduct in reporting the incident to law enforcement officials. As a result, they argue that each of Rose and Irving's causes of action is based on Maxwell's exercise of her right to petition. Murphy and Maxwell maintain that making a criminal complaint and speaking to law enforcement officials are communications in or pertaining to a judicial proceeding because emergency calls and criminal complaints are often the initial steps in bringing criminal proceedings against an alleged offender. In response, Rose and Irving urge that communications made to law enforcement in reporting a potential crime are not constitutionally protected.

The TCPA broadly defines "exercise of the right to petition." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4). The statutory definition includes "a communication in or pertaining to . . . a judicial proceeding [or] an official proceeding, other than a judicial proceeding, to administer the law[.]" *Id*. § 27.001(4)(A)(i), (ii). "Official proceeding" means "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." *Id*. § 27.001(8). In addition, "exercise of the right to petition" includes "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." *Id*. § 27.001(4)(E).

4

Texas has long recognized the need to balance the right to petition with the right to file a police report. *See Wood v. State*, 577 S.W.2d 477, 479 (Tex. Crim. App. 1978) (criminal offense of making false report must be reconciled with right to petition guaranteed by Texas Constitution); *Zahorik v. State*, No. 14-13-00763-CR, 2015 WL 5042105, at \*4 (Tex. App.—Houston [14th Dist.] Aug. 25, 2015, no pet.) (holding that additional proof requirements imposed on state when person is reporting police or other official misconduct are necessary to safeguard constitutional right to petition government for redress of grievances). While these cases concern the filing of a police report against an officer, the logic is the same. Filing a police report, whether true or false, implicates a person's right to petition the government, and this right must be considered when determining whether a person filed a false report. *See Wood*, 577 S.W.2d at 479; *Zahorik*, 2015 WL 5042105, at \*4; *see also Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2015 WL 390664, at \*6 (N.D. Tex. Jan. 29, 2015) (filing police report considered first step in initiating official criminal proceeding against alleged offender).

Rose and Irving argue that the TCPA should not apply because Maxwell's statements to the police were later determined to be false. In *Lefebvre v. Lefebvre*, 131 Cal. Rptr. 3d 171 (Cal. Ct. App. 2011), a California appellate court found that California's anti-SLAPP statute did not apply in a situation where it was uncontested that the complainant submitted an illegal, false criminal report.[4] *Id*. at 705. This is not the case before us. Subsequent California cases have held that the *Lefebvre* holding is limited to instances where the falsity and illegality of a submitted report is not controverted. *See Kenne v. Stennis*, 179 Cal. Rptr. 3d 198, 209-10 (Cal. Ct. App. 2014); *Grammer*, 2015 WL 390664, at \*6. Accordingly, *Lefebvre* is not persuasive. Moreover, courts in other states interpreting an anti-SLAPP statute similar to the Texas statute have held that statements reported to law enforcement regarding incidences of perceived wrongdoing are protected. *See, e.g.*, *Comstock v. Aber*, 151 Cal. Rptr. 3d 589, 598 (Cal. Ct. App. 2012) ("The law is that communications to the police are within SLAPP."); *Hindu Temple & Cmty. Ctr. Of High Desert, Inc. v. Raghunathan*, 714 S.E.2d 628, 632 (Ga. Ct. App. 2011) (statements to police by individuals alleging religious institution defrauded them of money protected by anti-SLAPP statute); *Benoit v. Frederickson*, 908 N.E.2d 714, 718 (Mass. 2009) (reporting of a rape to police initiates the filing of a criminal complaint and is protected by anti-SLAPP statute).

---

[4] Appellees' brief cites to *Lefebvre v. Lefebvre*, 996 P.2d 518 (Or. Ct. App. 2000). However, that is an Oregon family law case involving factual sufficiency related to that state's Family Abuse Prevention Act. We assume Appellees meant to cite to *Lefebvre v. Lefebvre*, 131 Cal. Rptr. 3d 171 (Cal. Ct. App. 2011).

Rose and Irving asserted four causes of action against Murphy and Maxwell: malicious prosecution, defamation, false imprisonment, and negligence. Each of these causes of action, as pleaded, is in direct response to Maxwell's notifying the police after she believed Rose was attempting to leave without paying for the gasoline. Therefore, their claims are based on, relate to, or are in response to Maxwell's exercise of her right to petition, and the TCPA applies. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 27.005(b), (c).

## PRIMA FACIE CASE

Because Murphy and Maxwell met their burden to show the TCPA applies, we now determine whether Rose and Irving established by clear and specific evidence a prima facie case for each essential element of any of their claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b), (c).

### Malicious Prosecution

Rose and Irving first argue that Maxwell is liable for malicious prosecution because she notified the police of an attempted theft.

Texas has long recognized a cause of action for those subjected unjustifiably to criminal prosecution, but has also made clear that the cause of action must sometimes yield to society's greater interest in encouraging citizens to report crimes, real or perceived. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 (Tex. 2006). The elements of malicious prosecution are as follows: (1) commencement of a criminal prosecution against the plaintiff; (2) the defendant's initiation or procurement of that prosecution; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) lack of probable cause to initiate or procure the prosecution; (6) malice in filing the charge; and (7) damage to the plaintiff. *Id*. at 792 n. 3.

The latter elements guard against a jury's natural inclination to punish those who, through error but not malevolence, commence criminal proceedings against a person who is ultimately exonerated. *Id*. at 792. The probable cause element asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were initiated. *Id*. at 792-93.

Rose and Irving assert there is no evidence that Maxwell had probable cause. They argue that Maxwell's reliance on the check verification system was misplaced and does not support probable cause. They reason that the checks tendered were supported by sufficient funds and

were declined for some other reason. Rose and Irving contend Maxwell should have called the verification service to attempt to resolve the problem. The essence of their argument is that Maxwell should have conducted her own independent investigation to determine why Rose's checks were declined.

It is well-settled that a private citizen has no duty to investigate a suspect's alibi or explanation before reporting a crime. *Id.* at 794. If the acts or omissions necessary to constitute a crime reasonably appear to have been completed, a complainant's failure to investigate does not negate probable cause. *Id.* Rose, a stranger to Maxwell, pumped more than eighty dollars' worth of gasoline to fill his vehicle and three or four containers. His credit card, personal check, and business check were each declined. Rose then returned to his vehicle without explanation and without offering another form of payment.

Rose and Irving alleged no facts and presented no evidence showing that Maxwell did not reasonably believe a crime was being committed. Each of them attached an affidavit to their response to the motion to dismiss. In their affidavits, Rose and Irving state that Rose had enough cash to pay for the gasoline. However, Rose's affidavit does not state that he told Maxwell he could pay with cash or that Maxwell was aware that he had cash to pay for the gasoline. Irving's affidavit does not contain any facts relative to any conversation Rose had with Maxwell or his failed attempts to pay for the gasoline with his credit card or checks. Therefore, both affidavits are insufficient to rebut the presumption that Maxwell acted with probable cause. Consequently, Rose and Irving did not present clear and specific evidence to establish a prima facie case for each essential element of malicious prosecution.

**Defamation**

Rose and Irving contend further that Maxwell committed defamation when she accused Rose of attempting theft. Specifically, they argue she committed defamation per se when she reported the theft, requested the drive-off ticket, and signed the complaint.

The elements of defamation include (1) the publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) with the requisite degree of fault; and (4) damages, in some cases. *Lipsky*, 460 S.W.3d at 593. The status of the person allegedly defamed determines the requisite degree of fault. *Id.* A private individual need only prove negligence. *Id*. A false statement that charges a person with a crime is defamatory per se. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984).

To be actionable, the alleged defamatory statement must be a statement of fact rather than opinion. *Howell v. Hecht*, 821 S.W.2d 627, 631 (Tex. App.—Dallas 1991, writ denied). An expression of opinion is considered protected free speech and is not considered defamatory. See *Simmons v. Ware*, 920 S.W.2d 438, 446 (Tex. App.—Amarillo 1996, no writ). Our determination of whether Maxwell's reporting of the incident to the police and the subsequent filing of a complaint were statements of facts or expressions of opinions will be dispositive of whether Rose and Irving have established a prima facie case of defamation. This is a question of law to be determined by the court. *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989).

An alleged defamatory statement must be examined within its context and in light of the surrounding circumstances. *Olivia v. Davilla*, 373 S.W.3d 94, 103 (Tex. App.—San Antonio 2011, writ denied). This is because statements may be made defamatory by taking them out of context. *Id.* From Maxwell's perspective, she witnessed Rose, a stranger to her, pump more than eighty dollars' worth of gasoline into his vehicle and several containers. Rose attempted to pay for the gasoline with his credit card, a personal check, and a business check. Each was declined. She then watched Rose return to his vehicle without explanation and without offering another form of payment. Under these circumstances, Maxwell stated she formed the belief that Rose was going to his vehicle to leave without paying.

Rose and Irving each testified in their affidavits that Rose could have paid for the gasoline with cash if asked to do so. In addition, they allege the checks were declined for a reason other than insufficient funds. However, this does not negate the fact that Rose's credit card and checks were declined and Rose returned to his vehicle without paying. Neither affidavit alleges facts or presents evidence that Maxwell did not reasonably believe that Rose was returning to his vehicle with the intent to leave without paying.

Nothing before us supports a finding that Maxwell's actions and statements to the police were anything more than her opinion based on the events that occurred. When construed as a whole in light of the surrounding circumstances, we conclude as a matter of law that Maxwell's statements constitutes an opinion and not a statement of fact that would be actionable by defamation. As a result, Rose and Irving have not established a prima facie case of defamation.

**False Imprisonment**

Rose and Irving next contend that Maxwell is liable for false imprisonment as a result of her actions. They argue that despite Rose's innocence, Maxwell directed that he be arrested.

8

False imprisonment has three essential elements: (1) willful detention; (2) without consent, and (3) without authority. ***Wal-Mart Stores, Inc. v. Rodriguez***, 92 S.W.3d 502, 506 (Tex. 2002). Liability for false imprisonment extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention. ***Id.*** at 507.

According to Rose and Irving, Rose attempted to pay for the gasoline with two sufficient checks, which were declined by the check verification system. Following the declines, Maxwell notified the police that Rose was attempting to steal gasoline and stood in front of Rose's vehicle until the police arrived. After their arrival, Maxwell pointed Rose out to them and signed a complaint against him. Rose and Irving maintain that Maxwell withheld vital information from the police—that the check decline problem could have been resolved by a telephone call.

The code of criminal procedure grants any person the right to prevent the consequences of theft. TEX. CODE CRIM. PROC. ANN. art. 18.16 (West 2005) Thus, a person has the right to seize personal property that has been stolen and bring it and the person suspected of committing the theft to a police officer. ***Id.*** To justify the seizure, there must be a reasonable ground to believe the property is stolen. ***Id.*** A store employee who witnesses someone commit the offense of theft of property from the store has the lawful right to arrest the offender. ***Simpson v. State***, 815 S.W.2d 900, 902 (Tex. App.—Fort Worth 1991, no writ). Therefore, as long as she reasonably believed a theft was being or attempting to be committed, Maxwell had the right to detain Rose and deliver him to the police. *See* TEX. CODE CRIM. PROC. ANN. art. 18.16; ***Simpson***, 815 S.W.2d at 903.

Although Rose and Irving presented evidence that Rose could have paid for the gasoline with cash, they did not present evidence that Maxwell had reason to know Rose had another form of payment. They also allege that the checks were declined for a reason other than insufficient funds. However, this does not negate the fact that the checks were declined and Rose had not paid for the gasoline when he returned to his vehicle. Therefore, even if Maxwell directed or requested that Rose be arrested, Rose and Irving did not bring forth any evidence that Maxwell should have known Rose was not attempting to leave the gas station without paying for the gasoline. As a result, Rose and Irving have not shown that Maxwell lacked the authority to detain Rose, and they did not establish a prima facie case of false imprisonment.

## Negligence

Rose and Irving allege Maxwell was negligent when she called the police. Specifically, they argue that Maxwell breached her duty to Rose when she failed to investigate the reasons for Rose's checks being declined. They further urge that Maxwell breached her duty when she failed to give Rose information from the check verification system that may have allowed him to identify and correct the error.

The common law doctrine of negligence consists of four essential elements: (1) a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) proximate cause; and (4) damages. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). The threshold inquiry in a negligence case is duty. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). A plaintiff must prove both the existence and the violation of the duty owed to him to establish liability in tort. *Id.* The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex. 1983).

Rose and Irving essentially claim that Maxwell owed them a negligence duty, in addition to the duties owed under malicious prosecution and defamation, to not falsely accuse Rose of committing a crime. Malicious prosecution actions are disfavored by the law because public policy favors the exposure of crime. *See ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 156 (Tex. App.—El Paso 1996, writ denied). To allow the existence of a duty not subject to the element of maliciousness would convert the tort of malicious prosecution into negligent prosecution. *Smith v. Sneed*, 938 S.W.2d 181, 184-85 (Tex. App.—Austin 1997, no writ). This would discourage citizen participation in criminal investigations and prosecutions and threaten the balance between protecting against wrongful prosecution and encouraging the reporting of a crime. *Id.* at 184. Consequently, a plaintiff cannot avoid the strict elements of a malicious prosecution action by labeling it negligence. *ITT*, 932 S.W.2d at 155-56; *see Wal-Mart Stores, Inc. v. Medina*, 814 S.W.2d 71, 73-74 (Tex. App.—Corpus Christi 1991, writ denied) (no recovery in tort for damage caused by an incorrect, but not malicious, prosecution).

No negligence duty exists not to falsely accuse someone of criminal wrongdoing. *Sneed*, 938 S.W.2d at 185; *see ITT*, 932 S.W.2d at 155-56. Therefore, Rose and Irving did not establish a prima facie case of negligence.

**Holding**

Because Rose and Irving have failed to establish a prima facie case for any of their causes of action, they failed to carry their burden under the TCPA. Therefore, the trial court erred in denying Murphy and Maxwell's motion to dismiss. We sustain Murphy and Maxwell's sole issue.

**DISPOSITION**

Having sustained Murphy and Maxwell's sole issue, we *reverse* the trial court's order denying Murphy and Maxwell's motion to dismiss, *render* judgment dismissing Rose and Irving's claims against them, and *remand* the case for a determination of attorney's fees and costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009 (West 2015) (award of attorney's fees and costs mandatory when an action is dismissed under TCPA).

**GREG NEELEY**
Justice

Opinion delivered October 5, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

11

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 5, 2016**

**NO. 12-15-00197-CV**

**MURPHY USA, INC. AND MARY FRANCES MAXWELL, MGR.,**
Appellants
V.
**FREDDIE J. ROSE AND LAUREEN IRVING,**
Appellees

Appeal from the 123rd District Court

of Shelby County, Texas (Tr.Ct.No. 15-CV-33018)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the order of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the order be **reversed** and the cause **remanded** to the trial court **for further proceedings** for a determination of attorney's fees and costs; and that this decision be certified to the court below for observance.

Greg Neeley, Justice
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*